The People of the State of New York *v.* E. Remington and Sons.

In the Matter of the Proof of Claim of The Ilion National Bank.

The contractual relations of a debtor and his creditor remain unchanged although insolvency has brought the general estate of the debtor within the jurisdiction of a court of equity for administration and settlement.

The creditors are entitled to prove their claims against the estate, without regard to any collaterals they may hold, and to receive dividends for the amounts proved.

*It seems,* if the collaterals they hold are more than sufficient to satisfy any deficiency after application of the dividends, the personal representatives of the insolvent may redeem them for the benefit of his estate.

Accordingly, *held*, that a creditor of an insolvent corporation, whose assets were in the hands of a receiver, had a right to prove and have dividends upon his entire debt, irrespective of collateral securities held by him.

The rules in bankruptcy cases, which proceed from express statutory provisions, are not controlling upon a court administering in equity upon the estates of insolvent debtors.

*Greenwood* v. *Taylor* (1 R. & M. 185); *In re Knowles* (13 R. I. 90), stated to have been overruled.

Reported below, 54 Hun, 505.

(Argued April 14, 1890; decided June 3, 1890.)

APPEAL by the receivers of E. Remington & Sons, an insolvent corporation, from an order of the General Term, made November 25, 1889, which affirmed an order of the Special Term, which overruled their exceptions to the report of a referee upon the claim of the Ilion National Bank, a creditor, and confirming the report of a referee.

The defendant corporation was proceeded against by the People, in an action for its dissolution on the ground of insolvency. Receivers were appointed and a reference ordered to take proof of claims. The Ilion National Bank, this respondent, was a creditor to a large amount and as collateral security for the payment of the indebtedness to it, had received pledges of properties and securities. It made proof of its full claim against the insolvent corporation, on the indebtedness theretofore created. The receivers objected that there should be deducted from the proof of claim the sums already realized by the respondent from the collateral securities and the value of the securities still held; and that the claim should be allowed for the balance only. But the referee allowed and reported the claim at the full amount, without regard to the securities, or the sums realized therefrom.

*William Kernan* for appellant. The referee erred in allowing the claims of the creditors to the full amount, without reference to the collateral securities held by such creditors, or to the amount realized therefrom before proof of claim was made. (*Midgely* v. *Slocomb*, 2 Abb. Pr. [N. S.] 275; *Jervis* v. *Smith*, 7 id. 217.) It is well settled in equity that

where one creditor has two funds of his debtor to which he can resort for payment, and another creditor has a lien on one of the funds only, equity will compel the first creditor to resort to that fund to which the lien of the order does not extend. (Bishop on Ins. Debt [2d ed.], § 356 ; Story's Eq. Juris. 633 ; *Halsey* v. *Rudd*, 9 Paige, 446 ; *Beasley* v. *Lawrence*, 11 id. 581 ; *Aldrige* v. *Cooper*, 8 Ves. 382.) That creditors should only prove the balance of their claims after deducting the collateral securities, is in accordance with the equitable rule enforced in bankruptcy. (*Greenwood* v. *Taylor*, 1 R. & M. 185 ; *Brocklehurst* v. *Jessup*, 7 Sim. 438 ; *Amory* v. *Francis*, 16 Mass. 308 ; *Farnum* v. *Bontelle*, 3 Metc. 159 ; *Wintz* v. *Hart*, 13 Ia. 515 ; *T. N. Bank* v. *Lanahan*, 66 Md. 461 ; *In re Knowles*, 13 R. I. 90 ; *Allen* v. *Donaldson*, 15 id. 480 ; *Jervis* v. *Smith*, 7 Abb. Pr. [N. S.] 220 ; 2 R. S. [7th ed.] 1534, § 4 ; *Cheesebrough* v. *Millard*, 1 Johns. Ch. 409 ; *Brinkerhoff* v. *Marvin*, 5 id. 320 ; *Evertson* v. *Booth*, 19 Johns. 485.) Those creditors who realized upon their securities before proving their debts, were entitled to prove only the balance of their debts, after applying the sums realized, and can share in the general fund only to that extent. (*Ex parte Kellock*, L. R. [3 Ch. App.] 769.) In some of the cases before the court, the collateral securities, instead of being the property of the insolvent corporation, and pledged by it, were the property of other parties, who pledged or allowed the same to be pledged at the request of, and for the benefit of the insolvent corporation. In such cases the same rules, as to the application of such securities, or the proceeds thereof, applies as in cases where the securities were the property of and pledged directly by the insolvent corporation. (Story on Bail. § 269 ; *Wilcox* v. *Campbell*, 106 N. Y. 325, 328, 329.)

*A. M. Mills* for respondent. The dividend from the moneys in the hands of the receivers should be made to the claimant upon the whole amount of its claim, irrespective of any property it may hold as collateral security for the pay-

ment of its demand. (*Midgely* v. *Slocum*, 2 Abb. [N. S.]
275; 32 How. Pr. 423; *Jervis* v. *Smith*, 7 Abb. [N. S.] 217;
*Putman* v. *Russell*, 17 Vt. 84; *West* v. *Bank of Rutland*,
19 id. 403; *Moses* v. *Baulet*, 2 N. H. 488; *Findley* v. *Homer*,
2 Conn. 350; *Logan* v. *Anderson*, 18 B. Monroe, 114;
*Kramers and Bakers' Appeal*, 37 Penn. St. 71; *Patten's
Appeal*, 45 id. 151; *Bates* v. *Paddock*, 9 N. E. Rep. 257;
*Yates* v. *Dodge*, 13 id. 847; Story's Eq. Juris. § 564; Bishop
on Insol. Debt, 373; *Mason* v. *Bogg*, 12 M. & C. 445; 2 W.
and T. L. C. in Eq. 257; *Ex parte Kellock*, 39 L. J. Ch. 112;
*In re Bank of England*, Id. 759; 18 W. R. 944; 22 L. T.
[N. S.] 895; L. R. [3 Ch. App.] 769; L. R. [5 Ch. Div.] 88;
21 L. T. [N. S.] 626; 5 L. T. Ch. 86; 39 L. J. Ch. 132.)
The equity rule that where one creditor has a lien upon two
funds for the payment of his debt, while other creditors of the
same debtor have a lien upon one of the two funds, the first
creditor will be obliged to resort to that fund upon which the
second creditor has no lien, does not apply to the case at bar.
(*Cheesebrough* v. *Millard*, 1 Johns. Ch. 409; *Brinkerhoff* v.
*Marvin*, 5 id. 320; *Evertson* v. *Booth*, 19 Johns. 485; *Bern-
hardt*, 85 N. Y. 172.)  If one holds a bond and mortgage to
secure his debt, the bond being the principal obligation, he
may sue on the bond and enforce a money judgment before
he forecloses the mortgage, and in such a case the policy of
our law is, that when a creditor has taken action to collect of
the debtor on his personal obligation he must exhaust the
debtor before he resorts to the mortgage. (Code Civ. Pro.
§ 1630.)  Under the bankrupt law, where the creditor held
as collateral security the property of a third person, he could
prove for the whole debt against the bankrupt estate, draw
dividends thereon, and resort to the collateral for his defi-
ciency. (Blumensteil on Bankruptcy, 287; Bishop on Insol.
Debt, 374.)  The settlement and distribution of the estate and
moneys in the hands of the court, are to be made as of the
time of the appointment of the receivers. (*Allen* v. *Daniel-
son*, 8 Atl. Rep. 705; *Kelloch's Case*, L. R. [3 Ch. App.] 769.)
The rule in bankruptcy which requires that the collateral

security be exhausted before the creditor draws a dividend was purely statutory and does not govern us. (*Mason* v. *Bogg*, 2 M. & C. 443; *Jervis* v. *Smith*, 7 Abb. [N. S.] 217.)

GRAY, J. The only question presented for our consideration and determination by this appeal is, whether the creditor of this insolvent corporation was entitled to prove and receive a dividend upon the full amount of the debt due from the insolvent estate; or, whether the receivers, as the personal representatives of the insolvent, could reduce the claim of the creditor, for the purposes of a dividend, by compelling a deduction, from the amount of the proved debt, of the value of collateral securities, or of any proceeds thereof. There are conflicting decisions upon this question in the courts of the United States, and in England, if we look back, up the current of opinions, we may find some differences in views. But the preponderance of authority is in favor of the view that the creditor has the right to prove and have dividends upon his entire debt, irrespective of the collateral security. In this state the precise question is without any controlling precedent. Two cases decided by the Special Term of the Supreme Court are to be found in the reports which, perhaps, bear upon the question. They arose under general assignments for the benefit of creditors, and are conflicting. It may be said, therefore, that the field is open to us for review and determination. I think we must conclude that the view which I have mentioned as having the weight of authority in its favor, is the one best according with the principles and established rules of equity jurisprudence, to which department of legal science the question pertains. Some confusion of thought seems to be worked by the reference of the decision of the question to the rules of law governing the administration of estates in bankruptcy; but there is no warrant for any such reference. The rules in bankruptcy cases proceeded from the express provisions of the statute, and they are not at all controlling upon a court administering, in equity, upon the estates of insolvent debtors. The bankruptcy act requires the creditor to give

up his security, in order to be entitled to prove his whole debt; or, if he retains it, he can only prove for the balance of the debt, after deducting the value of the security held. The jurisdiction in bankruptcy is peculiar and special, and a particular mode of administration is prescribed by the act. To administer, in cases of insolvency coming within the jurisdiction of courts of equity, by analogy with the modes of bankruptcy courts is not required, and such precedents are not to be deemed as affecting any change in the rules established by courts of equity, for the marshalling and distribution of assets.

Suggestion is also made of a principle of equity as controlling upon the question. It is, that where the creditor has two funds of his debtor, to which he can resort for payment, and another creditor has a lien on one fund only, equity will compel a resort by the first creditor to that fund to which the lien of the other does not extend. But that is not exactly this case, nor is the principle, if it were, decisive. The author, whose statement of the principle is quoted from, has limited its application to such cases, where to compel the first creditor to resort to the one fund will not operate to his prejudice, or trench upon his rights. (Story's Eq. Jur. § 633.)

Judge Story assigns as a reason for the application of the principle, that by so compelling the creditor to satisfy his claim out of one of the funds, no injustice is done to him in point of security or payment. The learned author's reason negatives the proposition that a secured creditor shall lose, or forego, any advantage, which he may have by reason of his security, and through which the fullest satisfaction of his debt can be obtained. In *Evertson* v. *Booth* (19 Johns. 485), Spencer, Ch. J., held, with reference to the equitable rule invoked by the appellants here, that it is not to be enforced, if it will "in the least impair the prior creditor's right to raise his debt out of both funds." And he emphatically remarked: "I know of no principle of equity which can take from him any part of his security until he is completely satisfied." Where could any such principle have its origin? The agreement between the debtor and the creditor was that the debt should be

paid. That debt is a definite quantity, and nothing less than its full amount can be said to be the debt. It is not altered or affected in its amount because the creditor may hold some collateral security. That is not a factor of the debt, but merely an incident to the debt. The very force and meaning of a collateral security are in the idea of a guaranty of the performance of the principal agreement, which was to pay the debt. The property, which a creditor holds as collateral to the indebtedness of his debtor, secures him to that extent, in case his debt is not paid in full by the debtor, or by his estate.

As between the creditor and his debtor, the latter could not compel the former to resort first to his collaterals before asserting his claim by a personal suit. The debtor has no control over the application of the collaterals. It is a general rule of equity that the creditor is not bound to apply his collateral securities before enforcing his direct remedies against the debtor. (Story's Eq. Jur. § 640; *Lewis* v. *United States*, 92 U. S. 618.) Then, on what principle can we hold that, because the debtor becomes insolvent, the contract with his creditor is changed, and that the creditor cannot, under those circumstances, enforce his direct claim against the debtor until he has realized on his securities? Is the rule capable of such inversion? I cannot see any reason in the proposition. I do not see why, in the absence of intervention by positive or statutory law, the engagements of the parties should be varied. If in bankruptcy another method was prescribed by the statute for the proof and payment of debts, it was a matter purely within the discretion of the federal legislature. Its constitutional right to establish uniform laws on the subject of bankruptcies throughout the United States, obviously, included the power to prescribe the mode of marshalling the insolvent's assets for distribution among creditors, and being the law of the country, it becomes a part of every contract. But this furnishes no reason why the established rules of courts of equity should be changed in the administration of the estates of insolvents.

In *Kellock's Case* (L. R. [3 Ch. App.] 769), decided in 1868, it was held that in the winding up of a company, under the

Companies Act of 1862, a creditor holding security might prove for the whole amount due to him, and not merely, as in bankruptcy, for the balance remaining due after realizing upon or valuing his security. In *Greenwood* v. *Taylor* (1 R. & M. 185), decided in 1830, it had been held that the practice in bankruptcy furnished a precedent which should be followed in the administration of assets; but in *Mason* v. *Bogg* ( 2 M. & C. 448), decided in 1837, Lord Chancellor COTTENHAM said "that the principle which the decision in *Greenwood* v. *Taylor* professes to follow cannot be the principle of a court of equity, is further proved by the circumstances that in bankruptcy a particular mode is prescribed. A creditor may there prove, but then he must give up his security, or he may obtain an order that his security should be sold, and that he should prove for the difference. In equity, however, a party may come in and prove without giving up or affecting his securities, except so far as the amount of his debt may be diminished by what he may receive." *Mason* v. *Bogg* was a case of the administration of the insolvent estate of a deceased person, and Lord COTTENHAM further remarked, as to the rights of a mortgage creditor, " a mortgagee has a double security. He has the right to proceed against both, and to make the best he can of both. Why he should be ·deprived of this right because the debtor dies and dies insolvent is not very easy to see." Then Sir WM. PAGE WOOD, speaking in *Kellock's Case (supra)* of the decision in *Greenwood* v. *Taylor*, said : " This court is not to depart from its own established practice, and vary the nature of the contract between the mortgagor and mortgagee by analogy to a rule which has been adopted by a court having a peculiar jurisdiction, established for administering the property of traders unable to meet their engagements, which property the court found it proper and right to distribute in a particular manner, different from the mode in which it would have dealt with in the Court of Chancery. * * * We are asked to alter the contract between the parties by depriving the secured creditor of one of his remedies, namely, the right of standing upon his securities until they are redeemed."

In this country we find that rule more generally prevailing, which allows the creditor holding securities to prove and to receive his dividend on the whole debt. It is asserted in Judge STORY's work on Equity Jurisprudence (§ 524), and in the following cases: *In re Bates* (118 Ill. 524); *West* v. *Bank of Rutland* (19 Vt. 403); *Moses* v. *Ranlet* (2 N. H. 488); *Findlay* v. *Hosmer* (2 Conn. 350); *Logan* v. *Anderson*, (18 B. Monroe, 114). In *Patten's Appeal* (45 Penn. St. 151) it was held, in relation to an assignment made for creditors, that the unsecured creditor has no right to the benefit of the securities held by another creditor until that other's whole debt was paid. In *Allen* v. *Danielson* (15 R. I. 480), which was a case arising under an insolvent assignment, DURFEE, Ch. J., delivering the opinion of the court, said: "According to the decided weight of authority the rule is to allow creditors to bring in their claims in full and have dividends accordingly." That opinion is both well considered and able, and it deliberately overruled a prior decision of the court in the case of *Knowles' Petition* (13 R. I. 90). The learned chief justice admitted the error into which they had previously fallen, and remarked that they would have decided the case differently if they had then, as now, the same array of authorities presented, and that, in adopting the other view, not only the correct rule would be established, but a rule which was generally prevalent elsewhere.

The counsel for the appellants finds decisions by the courts of Massachusetts, Iowa and Maryland, which, undoubtedly, conflict with the views we incline to. But I think that, whether we look at this question in the light of reason, or of the adjudged cases, the rule which best commends itself to our judgment is that which leaves the contractual relations of the debtor and his creditors unchanged, when insolvency has brought the general estate of the debtor within the jurisdiction of a court of equity for administration and settlement. The creditor is entitled to prove against the estate for what is due to him, and to receive a dividend upon that amount. If the collateral securities are more than sufficient to satisfy any

deficiency in the payment of the debt from the dividends, the personal representatives may redeem them for the benefit of the estate.

The order appealed from should be affirmed, with costs.

All concur (RUGER, Ch. J., in result) except EARL and O'BRIEN, JJ., taking no part.

Judgment affirmed.